UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANDREW WILLIAMS,

   Plaintiff,

v.                                                     Case No. 3:21cv255-LC-HTC

RUDY M. DAVIS, BETTY KEMP,
 G. NELSON, H.S. COX,
 T. CASSADY[1], and LAMBERT,

   Defendants.

_____/

ORDER and
REPORT AND RECOMMENDATION

     Plaintiff Andrew Williams files this civil rights action against Defendants arising out of a use of force incident occurring on August 30, 2017, while he was at Century Correctional Institution ("Century CI"). Pending before the Court is Defendants' motion for summary judgment. ECF Docs. 31 & 33.[2] Upon review and careful consideration of the amended complaint, motion, and Plaintiff's response,

---

[1] Plaintiff identified this defendant as "T. Cassidy" in the amended complaint. However, based on the return of summons and the MINS Incident Report, ECF Doc. 31-4 at 2, the correct spelling of Defendant Cassidy's name is "Timothy Cassady". Thus, the clerk will be directed to make this correction on the docket.

[2] Defendants Cassady, Davis, Kemp, Lambert and Nelson filed the motion for summary judgment, ECF Doc. 31, and Defendant Cox later joined in the motion, ECF Doc. 33.

ECF Doc. 39, the undersigned finds genuine issues of material fact preclude entry of summary judgment. Thus, the undersigned recommends Defendants' motion be DENIED, and the matter referred back to the undersigned to prepare the case for trial.

I.   **SUMMARY JUDGMENT STANDARD**

To prevail on their motion for summary judgment, Defendants must show Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 248 (1986) (emphases omitted). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*; *accord Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 998 (11th Cir. 1992).

Additionally, the Court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving

party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.,* 750 F.2d 838, 841 (11th Cir. 1985)).

## II.   DISCUSSION

Defendants seek summary judgment on two grounds.  First, they argue excessive force was not used.  Second, they argue their conduct was reasonable and thus they are entitled to qualified immunity.  In support of their motion, Defendants submit several declarations and documents, including incident reports and a report from the Office of Inspector General.

As will be discussed in more detail below, the undersigned has reviewed the evidence presented by Defendants and considered them, along with the sworn allegations in Plaintiff's verified amended complaint, ECF Doc. 5, and sworn response with exhibits, ECF Doc. 39, and finds they tell two different stories of what occurred.  Namely, the facts are in dispute as to whether Defendant Davis initiated a first blow to Williams without reason *and* whether Williams continued to be combative to Defendants as he was being transported to medical.  While Plaintiff may ultimately not be able to succeed on his claims, these factual disputes make summary judgment improper.

### A.     Plaintiff's Sworn Amended Complaint[3]

In the amended complaint, Plaintiff alleges the following: On August 30, 2017, Plaintiff was an inmate being housed at Century CI, and, at 9:50 a.m., was on his way to his work assignment -- the kitchen. On the way, a guard (not a defendant) noticed Plaintiff was carrying his legal materials, told him he could not take them to work, confiscated them, and told Plaintiff to report to his work assignment. Plaintiff asked to see a captain but was told to go to work or be put into confinement. When he got to the center gate, he asked Defendant Cox to call the captain so Plaintiff could discuss the confiscation of his legal work. Defendant Cox declined and told Plaintiff to report to work because it was count time.

When Plaintiff arrived at the kitchen for work, Defendant Davis checked everyone in for work, and Plaintiff asked Davis to call the captain so Plaintiff could discuss the legal materials issue with the captain. Defendant Davis refused. Thirty minutes later, Plaintiff approached Defendant Davis and advised him Plaintiff was declaring a mental health emergency. Defendant Davis "then became upset and Davis threatened to gas Plaintiff if Plaintiff didn't get away from the gate." When

---

[3] Plaintiff signed his amended complaint under the statement that "I declare under penalty of perjury that the foregoing statements of fact, including all continuation pages, are true and correct." ECF Doc. 5 at 5. Thus, the allegations in the amended complaint will be considered as evidence for summary judgment purposes. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) ("We also credit the 'specific facts' pled in plaintiff Caldwell's sworn complaint when considering his opposition to summary judgment.") (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) ("Plaintiff alleged specific facts in his sworn complaint, and they were required to be considered in their sworn form.").

Plaintiff refused and advised Defendant Davis he needed to see mental health staff, "Defendant Davis then opened the gate and got in Plaintiff's face and threatened to assault Plaintiff." Plaintiff "still did not move, at which time . . . Defendant Davis punched the Plaintiff in the face with closed fist." Then, "Defendant Davis continued his aggression on Plaintiff", and Plaintiff admits that Plaintiff "made every attempt to defend himself."

As this was going on, Defendant Kemp was in a position to intervene but did not stop Defendant Davis. Instead, Defendant Kemp came over and started "excessively spraying Plaintiff in the facial area with chemical agents" before handcuffing Plaintiff behind his back. Additional staff then arrived and started to take Plaintiff to the confinement unit.

Defendants Nelson and Cassady were leading the escort with additional officers. Once Plaintiff was on the side of the medical and laundry buildings, Defendant Nelson stated to Plaintiff, "You like to hit on Officers huh?" and another officer walking behind Plaintiff pushed him down to the ground. Nelson started kicking Plaintiff in the head, causing his head to split open and bleed.

Defendant Cassady and another officer began saying, "So you like to hit on Officer Davis huh?" and also started kicking Plaintiff, in the sides of his body. Plaintiff was rolled over onto his back and Defendant Cassidy stomped Plaintiff in the stomach. Plaintiff was then picked up off the ground by his feet, and Defendant

Cox "ran over to the Plaintiff and hit Plaintiff in the mouth with a big can of gas." This caused his lip to split open and bleed. Plaintiff asserts that "During this assault, Plaintiff was handcuffed behind his back and not acting disruptively and was complying with all orders."

Plaintiff was brought to the confinement unit and placed in the shower. Defendant Lambert and another officer (not a defendant) then brought Plaintiff to the medical department, where Plaintiff's wounds were cleaned, and then to the dentist, where sutures were placed in Plaintiff's lip.

The dentist also gave Plaintiff Ibuprofen and non-aspirin to take for the pain, but Defendant Lambert took them from Plaintiff as they were leaving the dentist's office and refused to return them to Plaintiff.

Plaintiff was then taken to the medical doctor's officer in the medical department, where the doctor placed sutures on the left side of Plaintiff's head. When escorted back to a cell, Plaintiff told Defendant Lambert he was in excruciating pain, but Lambert still refused to give the packages back to Plaintiff. Plaintiff asserts he had to have a tooth pulled in November 2017 as a result of the attack.

**B.     The Defendants' Summary Judgment Evidence**

Unsurprisingly, the Defendants present a different story. Based on the declarations and documents submitted by the Defendants, the following is what they contend occurred.

On August 30, 2017, Defendant Kemp and Davis were assigned as security officers for the Chow Hall. *See* OIG Report, ECF Doc. 31-3 at 11. Defendant Kemp was at the serving window line and Defendant Davis was at the computer by the entry door to the Hall. At 12:09 p.m., Defendant Davis gave Plaintiff "a direct order to get off the gate to the dining area and go back to work." Davis Decl., ECF Doc. 31-1 at 1. Defendant Davis then opened the gate to counsel Plaintiff, and Plaintiff "became combative and struck Davis with a closed fist in the face." Defendant Davis defended himself by striking Williams on his upper torso and face while ordering him to cease his combative behavior. *Id*. at 2.

Kemp observed Defendant Davis give Plaintiff orders to get behind the gate and also observed Williams push Defendant Davis in the head with an opened hand and follow up with 2-3 closed fist strikes to Defendant Davis' face.[4] *See* OIG Report, ECF Doc. 31-3 at 11. According to Defendant Kemp, Williams "locked up" on Defendant Davis's neck, and Davis was trying to get Williams off of him. *Id.* Defendant Kemp approached the two men and directed Plaintiff to stop his behavior, but he did not. *Id.* Also, according to Inspector Morris, an Office of Inspector General investigator, a fixed-wing digital security video footage shows Williams attacking Defendant Davis, including grabbing Davis around the back of the neck,

---

[4] Kemp did not submit a declaration in support of the motion. For purposes of this Report, the undersigned refers to her statement as set forth in the OIG Report.

but the view of the physical altercation is "partially obstructed by a wall and inmates' bodies." ECF Doc. 31-3 at 12. Inspector Morris makes no comment regarding whether the video shows any initial contact by Defendant Davis.

Defendant Kemp responded by applying 125 grams of chemical agents (OC)[5] at Williams. *See* Davis Decl., ECF Doc. 31-1 at 1. Nonetheless, Williams continued his aggressive and combative behavior, which caused Defendant Davis to wrestle Williams to the ground, where Defendant Kemp applied hand restraints and all force ceased. *Id.*

These initial events were also witnessed by two non-defendant officers, Covan and Lemon. Officer Covan overhead Williams yelling at Defendant Davis from inside the food prep area at approximately 12:06 p.m. *See* Covan Incident Report, ECF Docs. 31-11. He observed Defendant Davis approach the locked gate that separates the food prep area and the dining area in an attempt to counsel with Williams about his disruptive behavior. He observed Defendant Kemp rush towards them, pulling her assigned chemical agent from her holster. He heard her order Williams to stop and move away from Defendant Davis. He then saw her apply her chemical agent towards Williams, and "then realized that Inmate Williams was actively assaulting Officer Davis." *Id.* Similarly, Officer Lemon overheard Defendant Davis tell Williams to return to work, observed Defendant Davis

---

[5] OC refers to Oleoresin Capsicum (Pepper Spray). ECF Doc. 31-5 at 2.

Case No. 3:21cv255-LC-HTC

approach the gate, and saw Defendant Kemp approaching the gate while pulling out her chemical agent. *See* Lemon Incident Report, ECF Doc. 31-12.

After Williams was restrained on the ground, Defendant Nelson arrived to escort Williams to H-dorm to be placed in a decontamination shower cell, and Defendant Cox also arrived to assist. During the escort, Defendant Nelson went to unlock the security gate, and Williams pulled away from his custodial hold and attempted to head butt Defendant Cox. Defendant Cox then "defended himself by grasping Williams and placing him on the ground by utilizing his body weight to prevent him from harming staff." *Id.; see also,* Cox. Decl., ECF Doc. 31-14. Defendant Officer Timothy Cassady[6] arrived and continued the escort to H Dormitory and placed Plaintiff into a cool water shower. ECF Doc. 31-4 at 2. Plaintiff received a decontamination shower at 12:18 p.m. and a medical exam at 12:29 p.m. *See* ECF Doc. F31-5 at 1.

Although not a witness to the incident, Defendant Lambert was the shift supervisor and reviewed Davis's incident report. According to Defendant Lambert, he reviewed the use of force by the officers and found it necessary in order to prevent Plaintiff from further harming staff and to overcome his aggressive resistance of lawful orders to cease his combative behavior. ECF Doc. 31-2 at 1. Also, Defendant Lambert assigned Officer Petrossi to continue monitoring Williams after the event

---

[6] Defendants did not submit a declaration or an incident report for Defendant Cassady.

for 45-60 minutes "for signs of respiratory distress, with none noted." *Id.* at ¶ 8. Thus, Officer Petrossi began recording at 12:12 p.m. and recorded continuously until 12:45, when Williams was returned to a non-contaminated holding cell. *See* Petrossi Incident Report, ECF Doc. 31-10 at 1. Officer Petrossi remained at Williams' cell front to monitor him for respiratory problems for the remainder of the sixty (60) minutes, with none noted. He did not witness he use of force.

In addition to the sworn allegations in the amended complaint, Plaintiff also gave a sworn post-Miranda statemen to the Office of the Inspector General. Most notably, in that statement, which was recorded, Plaintiff admits he attacked Defendant Davis, but contends it was only after Defendant Davis "got up in [his] face" and "swung." *See* OIG Investigative Activity Report, ECF Doc. 31-3 at 4. He admitted to striking Defendant Davis "maybe twice" in the face area with a closed fist. *Id.* The OIG concluded Plaintiff had committed battery against Defendant and the Inspector forwarded the matter to a state attorney who subsequently filed a criminal charge against Plaintiff. *Id.* at 1. *See* 2018 CF 4111. Thus, the OIG Report was "closed by arrest." ECF Doc. 31-3 at 13.

### C. Legal Analysis

The "core judicial inquiry" for an excessive-force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). "This

standard requires a prisoner to establish two elements—one subjective and one objective: the official must have both 'acted with a sufficiently culpable state of mind' (the subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'" *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (quoting *Hudson*, 503 U.S. at 7).

For the subjective element, the Eleventh Circuit identified five factors set out by the Supreme Court in *Whitley v. Albers*, 475 U.S. 312 (2010) to evaluate whether force was applied maliciously or sadistically: (1) "the extent of injury"; (2) "the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting *Whitley*, 475 U.S. at 321). For the objective element, courts focus on "whether the official's actions were harmful enough or sufficiently serious to violate the Constitution." *Sconiers*, 946 F.3d at 1265.

It is well settled that at the summary judgment stage, the Court cannot make credibility determinations and must instead review the facts in the light most favorable to the non-moving party. *See e.g., Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting

evidence or to make credibility determinations [at summary judgment]; the non-movant's evidence is to be accepted for purposes of summary judgment."). Under that standard, the undersigned cannot ignore that the following facts remain in dispute: (1) whether Davis swung at Plaintiff for calling a medical emergency; (2) whether Plaintiff had stopped resisting after being sprayed with a chemical agent; (3) and whether Plaintiff was compliant and restrained during his transport. Given those disputes, the Court cannot conclude no excessive force was used under the *Whitley* 5-part test.

If Plaintiff's sworn testimony is believed, then there was no need for the application of any force by Davis when he initially approached him at the gate. *See* Response, ECF Doc. 39 at 11 (averring that Davis was acting "in a very aggressive manner" at the gate and struck Plaintiff but "never gave Plaintiff no loud verbal orders to cease Plaintiff [being] combative"). Similarly, there would be no need for Nelson, Cox or Cassady to have used forced on Plaintiff during the escort. *See id.* at 5-6 ("Plaintiff never pulled away from Defendant Nelson" and "Plaintiff never attempt[ed] to headbutt Defendant Cox."). If Defendants' version of events is believed, however, then the force used was necessary and reasonable because Plaintiff hit Davis for a reason other than alleged self-defense and head-butted Cox. Given those varying depictions, summary judgment is improper. *See Bowden v. Stokely*, 576 F. App'x 951, 953 (11th Cir. 2014) (affirming denial of summary

judgment because under plaintiff's version "a reasonable jury could that [defendants] applied force maliciously and sadistically rather than in a good faith effort to restore or maintain order").

Defendants also appear to suggest the force used was *de minimis* because there was a lack of serious injury. ECF Doc. 31 at 10. The medical records submitted by both parties, however, show otherwise. The Emergency Room Record, ECF Doc. 31-13, shows that Plaintiff was examined and "had a laceration above his left ear, laceration to his left upper lip and an abrasion to his right shoulder." *Id.* at 1. His injuries required "Sutures per MD", and the wounds were cleaned with peroxide. *Id.* The diagram of injuries showed the laceration above the ear was 1½ cm x ¼ cm and above the upper lip, 2 cm x 1 cm x ¾ cm. *Id.* at 2. He also alleged he had to have a tooth extracted as a result of the injuries.

Regardless, the extent of the injury is only one of the *Whitely* factors the Court considers. *See Skritch v. Thornton*, 280 F. 3d 1295, 1302 (11th Cir. 2002) (the injuries suffered is one factor to consider). While an insignificant injury tends toward a finding that the force used was *de minimis*, the lack of a significant injury is not grounds for dismissal. *See Wilkins v. Gaddy,* 559 U.S. 34, 38 (2010) (noting that while "the extent of injury may also provide some indication of the amount of force applied, "[i]jury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts"). As the Supreme Court noted in *Hudson,* "When

prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." *Hudson,* 503 U.S. at 10.

Here, Plaintiff's sworn allegations are that he was punched in the face with a closed fist by Davis and then beaten in the face, kicked, picked up by the feet and hit in the face with a metal can during the escort to medical. Such allegations, if proven, could violate the Eighth Amendment. *See e.g., Welch v. Hazeleaf,* 2010 WL 1417709, at * (N.D. Fla. 2010) (citing *Wilkins* and stating "the Court was concerned with whether the 'blows' were 'de minimis' and not necessarily the injuries").

The disputes of fact presented make this case different from the cases relied upon by Defendants in their motion. For example, in *Miles v. Jackson,* 757 F. App'x 828 (11th Cir. 2018), the prisoner conceded in his deposition he failed to comply with the defendant's orders and evaded defendant's attempts to get him to comply. *Id.* at 830. *Reed v. Mitchem*, 707 F. App'x 617 (11th Cir. 2017) is also inapplicable because, there, the case went to a bench trial. Likewise, neither *Smith v. Sec'y, Dep't of Corrections*, 524 F. App'x 511 (11th Cir. 2013) nor *Howard v. Memnon*, 572 F. App'x 692 (11th Cir. 2014) are applicable. In *Smith,* the court found a lack of serious injury where the undisputed evidence showed very minimal swelling around plaintiff's left eye, and in *Howard*, the court found the undisputed evidence showed

only a superficial abrasion on plaintiff's neck.  *Smith*, 524 F. App'x at 512-14; *Howard*, 572 F. App'x at 695.

Moreover, in *Howard*, the court also found plaintiff's "accounting of the incident to be blatantly contradicted by the record, so that no reasonable jury could have believed it."  *Howard*, 572 F. App'x at 695.  Here, however, Defendants have not provided such blatantly contradictory evidence.  Defendants have not provided a video that contradicts Plaintiff's version of events.  *See e.g., Scott v. Harris*, 550 U.S. 372, 380 (2007) (finding video evidence blatantly contradicted plaintiff's allegations).  Instead, Defendants simply rely on their sworn statements.  Those statements and Plaintiff's simply present "'a classic swearing match, which is the stuff of which jury trials are made.'"  *See Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019).

Finally, Defendants also argue they "are entitled to qualified immunity, because they were acting pursuant to their authority as correctional officials, and their conduct was reasonable under the circumstances."  ECF Doc. 31 at 13.  Qualified immunity protects government officials acting within their discretionary functions from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known.  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Rogers v. Miller,* 57 F.3d 986, 988 (11th Cir.1995).  Because questions of fact exist regarding whether

Defendants used force unnecessarily and in the absence of a need to restrain or obtain compliance, questions of fact also exist as to whether Defendants are entitled to qualified immunity.  *See Bowden*, 576 F. App'x at 955 ("because a reasonable jury could find [defendants] violated [plaintiff]'s Eighth Amendment rights, [defendants] are not entitled to qualified immunity").

Accordingly, it is ORDERED:

1. The clerk is directed to change Defendant Cassidy's name to "Timothy Cassady" on CMECF.

Additionally, it is respectfully RECOMMENDED that:

1. The motion for summary judgment, ECF Doc. 31, be DENIED.

2. This matter be referred back to the undersigned to prepare the case for trial.

At Pensacola, Florida, this 13th day of April, 2022.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to

Case No. 3:21cv255-LC-HTC

challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.